IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DAVID JEFFERSON,** :
:
    **Petitioner** : CIVIL NO. 1:CV-10-01078
:
**v.** : **(Judge Rambo)**
:
**WARDEN DAVID EBBERT,** :
:
    **Respondent** :

## M E M O R A N D U M

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner David Jefferson ("Jefferson"), an inmate currently incarcerated at the Federal Correctional Institution at Allenwood ("FCI-Allenwood"), in White Deer, Pennsylvania. (Doc. 1.) Jefferson is challenging the actions taken by the United States Parole Commission ("USPC") in the context of his parole revocation hearing. For the reasons that follow, the petition will be denied in part and dismissed in part as moot.

**I.**     **Background**

On May 7, 1981, the Superior Court of the District of Columbia sentenced Jefferson to a term of imprisonment of 31 years and 54 months for unauthorized use of a vehicle, receiving stolen property, and attempted armed robbery. (*See* Doc. 6-2,

Ex. 1.) He was paroled from this sentence on March 23, 2006, to remain under supervision until his full term date of April 20, 2023. (*Id*., Ex. 2.)

In a report dated October 15, 2007, Jefferson's community supervision officer informed the USPC of Jefferson's non-compliance with the conditions of his parole, namely failure to obey all laws, illegal use of controlled substances, and failure to report as directed. (*Id*., Ex. 4.) In response, the USPC issued a warrant charging Jefferson with violating the conditions of his parole. (*Id*., Exs. 5, 6.)

Jefferson was arrested on the USPC's warrant on August 20, 2008. (*Id*., Ex. 6.) On September 24, 2008, the USPC supplemented the warrant with an additional charge of "Law Violation: a) Possession of Crack Cocaine, b) Assault, c) Destruction of Property, d) Unlawful Entry." (*Id*., Ex. 7.) The details of that charge, as described by the USPC, are as follows:

> On 8-16-08, DC Metropolitan Police Officers observed the releasee drop something from his right hand, which later turned out to be a clear ziplock containing one red zip and one green zip. Inside the larger clear zip was three loose white rocks and white powder in the red and green zip. In attempt to flee the scene, the releasee shoved one of the officers down on the ground causing a deep laceration to his right hand. The releasee then ran to the front of a residence and kicked in the front door [of] the owner's home in [an] attempt[ ] to barricade himself inside the home. The victims did not know the releasee. The releasee was arrested by the DC Metropolitan Police Department for the above-cited offense on 8-16-08. This charge is based on the information contained in the police

2

report dated 8-16-08. Status of Custody/Criminal Proceedings: The
releasee is scheduled to return to court on October 2, 2008.

(*Id*., Ex. 7.)[1]

---

[1] In his petition, Jefferson provides a different version of the events occurring that day:

2. On August 16, 2008, at or about 9:45am [sic], while working outside, doing yard work in the 5100 block of D Street S.E. Wash. DC. I noticed a man approaching another black male walking toward a black female, a few yards away from me. As the man came within arm distance of each other one of the men rushed to grab the other black male & female. Out of no-where another man appeared to help the man grabbing the two, unknown to me at the time to be police officers.
3. In a state of fear and panic, as to the confusion of what would happen next, I decided that I should put as much distance as I could possible get between myself and the occurring incident that was taking place a few yards away. I ran to avoid any contact with whatever and whoever these people were.
4. Aware of an earlier greeting from Mrs. Barbara Oliver, an elderly neighbor, that I worked for on occasion. It was at that time that I heard "stop! stop!" As I turned to see a police officer in pursuit of me.
I was within a few feet of what I perceived to be safety, and I did not stop, or pay any more attention to the commands of the officer behind me.
6. [sic] I attempted to lock the door but, the officers forced the door open, and I struggled trying to protect myself from injury, to no avail, I was unable to stop from being injured by the officers.
7. After being treated at the Greater Southeast Community Hospital, I was transported to the 6th District for booking, on charges of: (a) possession of crack cocaine, (b) assault, (c) destruction of property, (d) unlawful entry.

(Doc. 1 at 11-12.)

3

The USPC conducted a revocation hearing on October 23, 2008.² (*Id.*, Ex. 8.) Jefferson appeared at the hearing with appointed counsel. (*Id.*) A Community Supervision Officer ("CSO") also appeared, with the file on Jefferson maintained by the Court Services and Offender Supervision Agency ("CSOSA").³ (*Id.*) In addition, Metropolitan Police Department ("MPD") Officer Marcus Smith appeared. (*Id.*) MPD Sergeant Ernest Grant, the officer allegedly assaulted by Jefferson, did not appear, despite being subpoenaed. (*Id.*) Further, Barbara Oliver, the owner of the house Jefferson allegedly broke into, appeared as a fact witness. (*Id.*)

At the hearing, the USPC examiner considered all the charges. The hearing summary indicates the following with respect to the charges of assault, destruction of property, and unlawful entry.⁴ The examiner called Officer Smith, who testified that he received a radio call for an assault on a police officer, and upon arriving at the 5000

---

² In his petition, Jefferson indicates that a probable cause hearing was held on August 22, 2008, in which an examiner for the USPC found probable cause to conduct a revocation hearing based on the charges. (*See* Doc. 1 at 12.) Under 28 C.F.R. § 2.101(a), "[t]he purpose of a probable cause hearing is to determine whether there is probable cause to believe that the parolee has violated parole as charged, and if so, whether a local or institutional revocation hearing should be conducted."

³ The hearing summary notes that the CSO who had supervised Jefferson did not appear at the hearing because he was no longer employed by CSOSA. (Doc. 6-2, Ex. 8.)

⁴ The USPC examiner made no finding on the charge of possession of crack cocaine, and that charge is not at issue here. (Doc. 6-2, Ex. 8.) Thus, the court need not recount facts relevant to that charge.

4

block of Drake Place, SE, Washington, D.C., he observed Jefferson, who matched the physical and clothing description from the radio call, running from the direction where the assault had just occurred. (*Id.*, Ex. 8 at 3.) Officer Smith exited his vehicle and Jefferson was running straight towards him. (*Id.*) Officer Smith yelled, "Stop, police," but Jefferson did not stop; rather, he ran to the front door of a residence on Drake Street and kicked in the door. (*Id.*) Officer Smith observed Jefferson kick in the door from approximately five feet behind him. (*Id.*) Jefferson closed the door on Officer Smith, and Smith had to force his way in. (*Id.*) As he was attempting to enter the residence, he heard a woman screaming for Jefferson to get out of the home. (*Id.*) Officer Smith was able to force his way into the residence, and after a brief struggle with Jefferson, he arrested him. (*Id.*)

The examiner questioned Officer Smith about his knowledge of the assault of Sergeant Grant. (*Id.*) He testified that he did not witness the assault, but was called to the scene immediately after it occurred. (*Id.*) In fact, he arrived at the scene within one minute of the radio call and observed Jefferson running from the scene. (*Id.*) He further testified that when he was holding Jefferson at the scene of arrest, Sergeant Grant arrived for a "show up," and positively identified Jefferson as the person who had assaulted him. (*Id.*) In addition, Officer Smith personally observed the laceration

on the palm of Sergeant Grant's hand, noting that it was a "fairly deep cut." (*Id.*) Sergeant Grant was treated on the scene inside an ambulance, and the laceration required stitches. (*Id.*)

The examiner also questioned Barbara Oliver, the resident at the home Jefferson allegedly broke into. (Doc. 6-2, Ex. 8 at 4.) Oliver testified that she knew of Jefferson as "Percy," and that he does yard work for her. (*Id.*) On the morning of the incident, she observed him doing yard work on the block, and then went inside her residence to use the bathroom. (*Id.*) While in the bathroom, she heard a commotion and came out to find Jefferson and a police officer in her home. (*Id.*) She observed that they had caused property damage, including broken furniture and damaged trim to the front door. (*Id.*) She then screamed for everyone to exit her residence, including the police. (*Id.*) She testified that she did not personally observe who had kicked in her door, but that Officer Smith told her that police had to kick in the door to get to Jefferson. (*Id.*)

After hearing this testimony, as well as cross-examination by Jefferson's counsel, the examiner found that Jefferson had violated the conditions of his release with respect to the charges of assault, unlawful entry, and destruction of property. (Doc. 6-2, Ex. 8 at 5.) The examiner acknowledged that his decision on the assault

was based on Officer Smith's hearsay testimony, but, nevertheless, the evidence "ha[d] sufficient indicia of reliability to consider it," and thus, the testimony of . . . Sergeant Grant is not necessary." (*Id.*) The examiner also credited Officer Smith's testimony with respect to the finding related to unlawful entry and destruction of property. (*Id.*)

The examiner rated the severity of the parole violation as Category Six severity offense because it involved Assault on a Police Officer with Bodily Injury. (*Id.*, Ex. 8 at 6.) *See also* 28 C.F.R. §§ 2.20, 2.21(b). Combined with a salient factor score of 2 points, the guideline range became 78-100 months to be served prior to reparole. (Doc. 6-2, Ex. 8 at 6.) Further, because Jefferson was found guilty of assaulting another inmate while in a prison facility awaiting his parole revocation hearing, the USPC was required to add an additional 0-10 months to the guideline range, resulting in an aggregate guideline range of 78-110 months. (*Id.*) Under these guidelines, the examiner recommended that parole be revoked; that none of the time spent on parole be credited; that time spent in custody on a previous warrant from March 1, 2007 to July 19, 2007 be credited towards the service of the maximum term; and that Jefferson continue to a presumptive parole on October 19, 2017, after service of 110 months. (Doc. 6-2, Ex. 8 at 7.) On November 17, 2008, the USPC adopted the examiner's

recommendation, and revoked his parole under those conditions. (Doc. 6-2, Ex. 9.) On December 10, 2009, the National Appeals Board affirmed the USPC's decision on administrative appeal. (Doc. 6-2, Ex. 10.)

By notice dated June 28, 2010, the USPC reopened Jefferson's case. (Doc. 6-2, Ex. 11.) Specifically, the USPC ordered the following:

> Schedule for a rehearing on the next available docket. At the rehearing, the Commission will apply the 1987 guidelines of the District of Columbia Board of Parole to calculate a total point score and determine whether reparole is warranted.
>
> In addition, the Commission vacates the finding of fact on Charge 4(b) of the warrant supplement dated September 24, 2008 (Assault). The Commission will not consider this charge (Assault) in determining your total point score.

(*Id*.)

Prior to the reopening of his case by the USPC, Jefferson filed his habeas petition on May 20, 2010. (Doc. 1.) In the petition, Jefferson claims that the USPC violated his right to due process as well as violated the Ex Post Facto Clause of the United States Constitution when it revoked his parole. On June 11, 2010, the court issued an order directing Respondent to show cause within twenty days why Jefferson should not be granted habeas relief. (*See* Doc. 4.) Respondent answered the petition

on July 1, 2010, (Doc. 6), and Jefferson replied on July 14, 2010, (Doc. 7). Thus, the petition is now ripe for disposition.

**II.    Discussion**

A petition for writ of habeas corpus under § 2241 is the proper vehicle for relief "where petitioner challenges the effect of events 'subsequent' to his sentence," *Gomori v. Arnold*, 533 F.2d 871, 874 (3d Cir. 1976), and where he challenges the execution of his sentence rather than its validity, *see Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). Jefferson is challenging the execution of his sentence in that he seeks review of the process by which the USPC revoked his parole. Therefore, he has properly invoked section 2241. *See Bennett v. Soto*, 850 F.2d 161, 163 (3d Cir. 1988).

As stated above, Jefferson claims in his petition that the USPC violated his right to due process as well as violated the Ex Post Facto Clause when it revoked his parole. Specifically, he contends that the USPC violated his due process rights when it: (1) conducted a parole revocation hearing before the District of Columbia authorities had addressed Jefferson's criminal charges arising out of the incident, (2) denied him the right to confront and cross-examine the victim of the alleged assault, Sergeant Grant,

9

because the medical records of Grant's injury were not introduced at the revocation hearing, and (3) relied on the hearsay testimony of Officer Smith in finding that Jefferson had assaulted Sergeant Grant. He also claims that the USPC violated the Ex Post Facto Clause when it applied the reparole guidelines found at 28 C.F.R. § 2.21 rather than the 1987 guidelines of the District of Columbia Board of Parole. The court will address these claims in turn.

### A. Due Process During Parole Revocation Hearing

The United States Supreme Court has held that the possible deprivation of liberty inherent in parole revocation proceedings entitles a parolee to minimum due process protections. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Court ruled that a parolee is entitled to a two-tiered hearing procedure, a preliminary hearing at or near the time of arrest to determine whether probable cause exists to believe that he has committed a parole violation, and a somewhat more comprehensive hearing prior to making a final revocation decision. *Id*. at 485-89.

The first minimum requirement of due process set forth in *Morrissey* is that the parolee is entitled to "written notice of the claimed parole violation." *Id*. at 489. Beyond the written notice, *Morrissey* mandates these additional due process protections:

10

> (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole . . . .

*Morrissey*, 408 U.S. at 489.

### 1. **Timing of Revocation Hearing**

Jefferson claims that the USPC violated his right to due process by conducting a parole revocation hearing prior to disposition of new criminal charges against him. However, it is well settled that a parole board may revoke parole on the basis of an offense even if the parolee is never criminally charged, or if he is acquitted, or if the charges are dismissed prior to trial. *United States v. Chambers*, 429 F.2d 410, 411 (3d Cir. 1970); *Williams v. Solla*, Civ. A. No. 88-0167, 1988 WL 83780, at *1 (E.D. Pa. 1988). *See also United States v. Manuszak*, 532 F.2d 311, 317 (3d Cir. 1976) (finding "to revoke probation it is not necessary that the probationer be adjudged guilty of a crime, but only that the court be reasonably satisfied that he has violated one of the conditions."). What is required is that the revocation be based on the board's independent, properly conducted procedures. *Chambers*, 429 F.2d at 411. *See also*

*Morrissey*, 408 U.S. at 489. Thus, based on this settled case law, Jefferson's claim here fails.

Moreover, Jefferson's reliance on the text of the 1987 guidelines relating to revocation of parole in the District of Columbia Code, specifically Chapter 2, "Parole and Adult Prisoners," of Title 28, "Corrections Courts and Criminal Justice," is misleading here, namely because the regulations do not state what Jefferson claims. Specifically, Jefferson claims that the 28 District of Columbia Municipal Regulations ("DCMR") § 219.7 through § 219.9 state the following:

> 2. Under 28 DCMR § 219.7, Revocation Procedures states: In a Revocation Hearing, where the sole basis for the revocation process rests upon an alleged law violation that is before a Court of competent jurisdiction, but has not been adjudicated, it **shall** be the general policy of the Board to continue the case without a final decision on revocation of parole, pending the Court's decision on the pending charge(s).
>
> 3. Under 28 DCMR § 219.8 states: If there is overwhelming and compelling evidence that the parolee is guilty of the alleged law violation (for example, a signed or stated admission on the record), the Board may elect to make a finding that a condition of parole or release has been violated, and may revoke parole without a finding by a Court on the charge(s).
>
> 4. Under 28 DCMR § 219.9 states: If the Board elects not to revoke but to continue the case pending a Court disposition with reference to the Charge(s), the Board shall have the option on custody status or either reinstating the parolee to a parole status pending disposition of the charge(s) or of continuing the parolee in physical custody on the Board warrant, depending on the circumstances of the case.

12

(Doc. 1 at 20.) However, these sections in actuality state the following:

> 219.7 If the Board finds by a preponderance of evidence that a parolee has violated a condition of his or her parole by the use, sale, possession, purchase, manufacture, production, or distribution of phencyclidine, or a phencyclidine immediate precursor (PCP), the Board shall revoke parole.
>
> 219.8 In determining whether or not parole should be revoked, in those instances not covered in § 219.7, when one (1) or more violations have been proved by a preponderance of evidence, the Board shall utilize among others, the following criteria which shall be explicitly addressed in the Board's written decision relative to the case:
> (a) Risk to the community if the parolee is allowed to remain on parole supervision;
> (b) Seriousness of violation or violations with which the parolee has been charged or of which the parolee has been convicted;
> (c) Whether violations represent a continuing pattern or are indicative of serious adjustment problems which evidence a disrespect for the parole system or which could lead to further criminal involvement;
> (d) Whether the criminal charge or conviction involves one (1) or more of the offenses or violations set forth in § 217.7 of this chapter;
> (e) Whether the parolee has other outstanding criminal charges; and
> (f) Whether there is evidence of other negative adjustment by the parolee while under supervision.
>
> 219.9 Counsel may be retained by the parolee, or if he or she is financially unable to retain counsel, representation may be obtained pursuant to applicable provisions of the District of Columbia Criminal Justice Act, §§ 11-2601, et seq., D.C. Code, 1981 ed. Neither the Board nor its staff shall initiate

action or make any arrangement to obtain legal
representation or witnesses for the alleged violator.

28 DCMR §§ 219.7-219.9.[5] Clearly, the actual language of these sections does not support Jefferson's argument with respect to the timing of his revocation hearing. Thus, the court will not address this claim further.

### 2. **<u>Jefferson's Right to Confront and Cross-Examine Witness</u>**

Jefferson claims that the USPC violated his right to due process when it failed to require the testimony of the alleged victim of the assault, Sergeant Grant, or allow the entry into evidence of Grant's medical records documenting his alleged injuries. As relief, he seeks immediate release from custody.

As set forth above, the Supreme Court has established that one of the due process protections owed a petitioner in parole revocation proceedings is "the right to confront and cross-examine adverse witnesses." *Morrissey*, 408 U.S. at 489. In the instant case, as set forth above, on June 28, 2010, the USPC informed Jefferson that

---

[5] Effective August 5, 1998, the District of Columbia Board of Parole was abolished and its jurisdiction over parole decisions for D.C. Code felons was transferred to the USPC. *See National Capital Revitalization and Self-Government Improvement Act*, Pub.L.No. 105-33, § 11231, 111 Stat. 712, 745-46 (codified at D.C. Code § 24-131). Upon assuming the D.C. Board's jurisdiction, the USPC began a process of revising the regulations for determining D.C. Code offenders' suitability for parole. *See Sellmon v. Reilly*, 551 F. Supp. 2d 66, 72-73 (D.D.C. 2008) (discussing revisions). The revisions were codified at 28 C.F.R. § 2.70-2.107 in 2000 ("2000 Regulations"). The 2000 Regulations specify that they are applicable to any D.C. Code offender whose first parole hearing would occur after August 4, 1998. *See* 28 C.F.R. § 2.80(a)(5). In this case, there is no dispute that the 1987 guidelines are applicable to Jefferson. (*See* Doc. 6-2, Ex. 11.)

he would be receiving a new parole revocation hearing. In the notice to Jefferson, the USPC stated the following:

> At the rehearing, the Commission will apply the 1987 guidelines of the District of Columbia Board of Parole to calculate a total point score and determine whether reparole is warranted.
>
> In addition, the Commission vacates the finding of fact on Charge 4(b) of the warrant supplement dated September 24, 2008 (Assault). The Commission will not consider this charge (Assault) in determining your total point score.

(Doc. 6-2, Ex. 11.)

The court finds that this USPC notice to Jefferson moots his claim regarding confrontation and cross-examination of an adverse witness. Specifically, the notice informs Jefferson that it will be considering his case under the 1987 guidelines, and that it will vacate the assault finding and not consider it in determining his total point score. Because Jefferson seeks to confront and cross-examine Sergeant Grant about the assault, but the USPC will no longer be addressing the charge of assault in its determination of whether to revoke Jefferson's parole, the instant claim will be dismissed as moot. Moreover, since the remedy to this claim is receiving a new revocation hearing rather than outright release from custody, the court will not consider Jefferson's relief requested. *See D'Agostino v. Keohane*, 877 F.2d 1167, 1174 (3d Cir. 1989) (finding petitioner had been granted the due process which he

15

alleged he had been denied when the parole board granted a new hearing on his claim).

### 3. **Hearsay Testimony Regarding Assault Charge**

Jefferson claims that the USPC violated his right to due process when it relied upon hearsay testimony in its finding that he had assaulted Sergeant Grant. Based on the USPC's June 28, 2010 notice to Jefferson regarding a new revocation hearing, the court finds this claim is now moot.

As set forth above, the USPC informed Jefferson on June 28, 2010 that he will receive a new parole revocation hearing utilizing the 1987 guidelines, and that it would vacate the assault finding and not consider it in determining his total point score. Because Jefferson is complaining that the USPC relied on hearsay testimony when considering the assault charge, but the USPC will no longer be addressing the charge of assault in determining whether to revoke Jefferson's parole, instant claim will be dismissed as moot.

### 4. **Ex Post Facto Claim**

Jefferson claims that the USPC violated the Ex Post Facto Clause by applying the reparole guidelines found at 28 C.F.R. § 2.21 rather than the 1987 guidelines of the District of Columbia Board of Parole. Initially, the court notes that a retroactive

16

application of a change in parole law, if applied rigidly or mechanically, can constitute an ex post facto violation. *See Bonilla v. Vaughn*, No. Civ. A. 97-7440, 1998 WL 480833, at *7 (E.D. Pa. 1998). However, in light of the USPC's June 28, 2010 notice to Jefferson informing him that he would be receiving a new parole revocation hearing that will apply the 1987 guidelines, this claim will be dismissed as moot.

### III. Conclusion

For the reasons set forth herein, Jefferson's claim relating to the timing of the parole revocation hearing will be denied. The remaining claims will be dismissed as moot.

An appropriate order will issue.

s/Sylvia H. Rambo  
United States District Judge

Dated: September 15, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DAVID JEFFERSON,** :
:
    **Petitioner** : **CIVIL NO. 1:CV-10-01078**
:
**v.** : **(Judge Rambo)**
:
**WARDEN DAVID EBBERT,** :
:
    **Respondent** :

## O R D E R

**AND NOW**, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED** in regards to the claim relating to the timing of the parole revocation hearing.

2) The remaining claims in the petition for writ of habeas corpus (Doc. 1) are **DISMISSED AS MOOT**.

3) The Clerk of Court is directed to **CLOSE** this case.

                                                s/Sylvia H. Rambo
                                            United States District Judge

Dated: September 15, 2010.